UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| STEVEN SWARTWOOD; JOANNA SWARTWOOD; R.S., a minor; D.S., a minor,<br><br>Plaintiffs,<br><br>v.<br><br>COUNTY OF SAN DIEGO; SAN DIEGO HEALTH AND HUMAN SERVICES AGENCY; POLINSKY CHILDREN'S CENTER; MAYA BRYSON,<br><br>Defendants. | Civil No.   12CV1665-W (BGS)<br><br>**ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFFS' MOTION TO COMPEL**<br><br>[Doc. No. 30] |
|---|---|

Before the Court is Plaintiffs' motion to compel documents over which Defendants have asserted the deliberative process, official information and attorney-client privileges. (Doc. No. 30.) Having considered the parties' briefs and accompanying submissions, the Court grants Plaintiffs' motion in part and denies it in part.

**I. Background**

This is an action filed under 42 U.S.C. § 1983 for civil rights violations and the matter includes a cause of action pursuant to *Monell v. Dep't of Soc. Servs. of New York*, 436 U.S. 658 (1978). (Compl., Doc. No. 1.) In addition, Plaintiffs have pendent state claims for assault, battery, false imprisonment, intentional infliction of emotional

1  distress, as well as violations of state civil rights laws. (*Id.*) Specifically, Plaintiffs
2  Steven and Joanna Swartwood, along with their two minor children through their
3  guardian ad litem, allege Defendants violated their constitutional rights by wrongfully
4  removing and detaining the two children from May 17, 2011 to May 19, 2012. (*Id.*)
5  Plaintiffs also allege Defendants conducted an illegal and intrusive physical
6  examination of the children without the parents' presence or consent. (*Id.*)

7  Plaintiffs move to compel disclosure of: (1) approximately 11 lines of text
8  redacted from documents prepared as a result of the Office of the Ombudsman's
9  investigation into Plaintiffs' complaints against the social worker who removed the
10 children, and (2) a line of redacted text from an email stream.[1] (Pls.' Mot. To Compel;
11 Doc. No. 30.)

12 **II. Discussion**
13 **A. Discovery Legal Standard**
14 Federal Rule of Civil Procedure 26 governs the scope of discovery, and
15 provides "[p]arties may obtain discovery regarding any nonprivileged matter that is
16 relevant to any party's claim or defense . . . . Relevant information need not be
17 admissible at the trial if the discovery appears reasonably calculated to lead to the
18 discovery of admissible evidence." Fed.R.Civ.P. 26(b)(1). Federal privilege law
19 applies in this federal question case. *NLRB v. North Bay Plumbing, Inc.*, 102 F.3d
20 1005, 1009 (9th Cir.1996) (citing Fed. R. Evid. 501.)
21 ///

---

[1] Plaintiffs' motion also addresses Defendants' delay in producing the privilege log and argues delay as a basis for the Court to decide Defendants waived their right to assert privileges. (Pls.' Mem. of P.& A. at 9; Doc. No. 30.) Although Plaintiffs make cogent arguments regarding Defendants' delay in producing a privilege log, the Court finds it more appropriate to directly address the merits of the privilege claims rather than first engage in the "holistic reasonableness analysis" required to decide whether Defendants waived privilege. *Burlington Northern & Santa Fe Ry Co. v. U.S. District Court for Dist. of Montana*, 408 F.3d 1142, 1149 (2005). Ultimately the privilege log was produced and contained sufficient information to allow Plaintiffs and the Court to analyze the claimed privileges. Thus, ordering disclosure based on waiver in these circumstances would amount to the "mechanistic determination" the Ninth Circuit cautioned against in *Burlington*. *Id.*

**B. Analysis of Claimed Privileges**

    **1. Deliberative Process Privilege**

Defendants asserted the Deliberative Process Privilege as a basis to withhold 11 tines of text reflecting the findings and conclusions of an investigation by the Health and Human Services Agency's special unit, the Office of the Ombudsman ("Ombuds"). The Ombuds is comprised of a group of four employees that work under the umbrella of the Health and Human Services Agency ("Agency"). The Ombuds independently investigate complaints made against social workers and report the results of those investigations to the Agency's department of Child Welfare Services. (Zanders-Willis Decl. at ¶¶ 1,3; Doc. No. 33-2.) Here, the Ombuds conducted an investigation into the actions of the social worker who removed Plaintiffs' minor children from the home and it is the investigators' conclusions and recommendations regarding the social worker's actions in this matter at issue in this privilege dispute. (*Id*. at ¶ 12.)

Federal law recognizes the deliberative process privilege, which shields confidential inter-agency memoranda on matters of law or policy from public disclosure. *Nat'l Wildlife Fed'n v. U.S. Forest Serv.*, 861 F.2d 1114, 1116 (9th Cir.1988). Under the privilege, a government may withhold documents that "reflect advisory opinions, recommendations and deliberations comprising part of a process by which government decisions and policies are formulated." *FTC v. Warner Commc'ns Inc.*, 742 F.2d 1156, 1161 (9th Cir.1984). The purpose of the privilege is "to promote frank and independent discussion among those responsible for making governmental decisions and also to protect against premature disclosure of proposed . . . policies or decisions." *Id*. (citations omitted).

In order to be protected by the deliberative-process privilege, "a document must be both (1) predecisional or antecedent to the adoption of agency policy and (2) deliberative, meaning it must actually be related to the process by which policies are formulated." *United States v. Fernandez*, 231 F.3d 1240, 1246 (9th Cir.2000).

Notably, even when the deliberative process privilege applies, the privilege is a qualified one and if a litigant's need for the materials and need for accurate fact-finding outweigh the government's interest in confidentiality, the materials will be disclosed. *FTC*, 742 F.2d at 1161.

### a. Predecisional

A "predecisional" document is one "prepared in order to assist an agency decisionmaker in arriving at his decision," and may include "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency." *Maricopa Audubon Soc'y v. U.S. Forest Serv.*, 108 F.3d 1089, 1093 (9th Cir.1997). Moreover, "the agency must identify a specific decision to which the document is predecisional." *Id*. at 1094.

The declarations submitted by Defendants indicate the redacted lines of text contained in the Office of Ombudsman Brief Case Review: Swartwood Family, constitute a predecisional document because the Ombuds investigator's findings and recommendations precede any ultimate action such as revision of policies or procedures. (Zanders Decl.; Doc. No. 33-2, Hoene Decl.; Doc. No. 33-3.) The decision to revise policies and procedures would not be made by Ombuds investigators, those decisions are ultimately made by Agency management. (*Id.*) Thus, this order finds that the Office of Ombudsman, Brief Case Review document is predecisional because the investigator's findings are recommendations reflecting the investigator's opinions rather than a policy decision of the Agency.

### b. Deliberative

The next issue is whether the findings and recommendations of the Ombuds investigation are deliberative. A predecisional document is part of the deliberative process if "the disclosure of [the] materials would expose an agency's decision-making process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions." *Carter v. U.S. Dep't*

*of Commerce*, 307 F.3d 1084, 1089 (9th Cir.2002). "[P]redecisional materials are privileged to the extent they reveal the mental processes of decision-makers." *Id*. at 1090. Moreover, "the document is considered to be part of the deliberative process as long as it is . . . actually related to the process by which policies are formulated" *Nat'l Wildlife*, 861 F.2d at 1118.

Defendant argues the results of this Ombuds investigation "is precisely the type of information protected by the deliberative process privilege." (Defs.' Mem. of P. & A. ISO Opp'n at 5; Doc. No. 33.) According to Defendants, the investigation findings are deliberative because the investigator seeks out evidence and makes determinations based on facts. (*Id.*) The findings and recommendations relate to the process by which policies are formulated because based on the investigation, the Agency often will implement additional training or change existing policies and practices. (Zanders-Willis Decl. at ¶ 4; Doc. No. 33-2.)

Plaintiffs appear to concede the deliberative nature of the information contained in the redacted text. (Pls.' Mem. of P. & A. at 6; Doc. No. 33 (stating "Defendant's deliberative privilege claim cannot be applicable to the information on page 25 of the Ombudsman report because the deliberative process of the County is itself in dispute.").) By arguing that their need for disclosure of the redacted text stems from the fact the deliberative process is precisely at issue in this case, Plaintiffs cannot also argue the documents sought are not deliberative in nature.

Because the findings and recommendations of the Ombuds investigation appear both predecisional and deliberative, they may fit within the protective realm of the deliberative-process privilege. Defendant, however, cites to no controlling authority applying the deliberative process privilege in the context of a civil rights case to documents like the one sought through Plaintiffs' request. Other courts in the Ninth Circuit have rejected a defendant's use of the deliberative process privilege in relation to internal affairs investigations, as these communications are not designed to contribute to the formulation of important public policy and are routinely generated.

*See Soto v. City of Concord*, 162 F.R.D. 603, 612–13 (N.D. Cal. 1995) ("The 'deliberative process' privilege, closely related to the self-critical analysis privilege, is also inappropriate for use in civil rights cases against police departments."); *Pittman v. County of San Diego*, 2010 WL 3733867, at *3 (S.D. Cal. Sept.17, 2010). Although this is not a civil rights case against a police department, those cases are instructive because this is a civil rights case against a government agency and the documents at issue here result from an internal investigation akin to internal affairs investigations arising out of complaints made against police department personnel.

Because existing case law does not precisely address whether the deliberative process privilege applies to the documents at issue in this litigation, in an abundance of caution and in order to afford Defendants the benefit of the doubt that the privilege applies in the circumstances, the Court will conduct the balancing analysis to determine whether Plaintiffs' need for disclosure outweighs Defendants' interest in confidentiality.

### c. Balancing of Factors to Decide Whether Disclosure Appropriate

"A litigant may obtain deliberative materials if his or her need for the materials and the need for accurate fact-finding override the government's interest in non-disclosure." *FTC*, 742 F.2d at 1161. In balancing the need for disclosure against the need for confidentiality, the Ninth Circuit has considered the following factors: "(1) the relevance of the evidence; (2) the availability of other evidence; (3) the government's role in the litigation; and (4) the extent to which disclosure would hinder frank and independent discussion regarding contemplated policies and decisions." *Id*. Other factors courts may consider include: "(5) the interest of the litigant, and ultimately society, in accurate judicial fact finding, (6) the seriousness of the litigation and the issues involved, (7) the presence of issues concerning alleged governmental misconduct, and (8) the federal interest in the enforcement of federal law." *North Pacifica, LLC v. City of Pacifica*, 274 F. Supp.2d 1118, 1122 (N.D. Cal. 2003). The

///

deliberative-process privilege should be "strictly confined within the narrowest possible limits consistent with the logic of its principles." *Id.*

### i. Relevance.

The gravamen of Plaintiffs' complaint is Defendants violated Plaintiffs' constitutional rights by removing the children from the home and detaining them unnecessarily. Further, Plaintiffs state a *Monell* claim against the County of San Diego on the basis that the County failed to change its policies and counsel or discipline social workers following citizen complaints. (Pls.' Mem. P. & A. at 7.) The lines of text in dispute are centrally relevant to Plaintiffs' claims because they contain the Ombuds investigators' conclusions and recommendations regarding the social workers' actions after conducting an independent investigation into Swartwood matter. (Zanders-Willis Decl. at ¶ 12.) Further, these conclusions and recommendations are considered by the Ombud's Child Welfare Services Director, who makes decisions as to whether or not applicable policies and procedures need improvements. (Decl. Hoene; Doc. No. 33-3.)  The findings and recommendations provide important information concerning the adequacy of the social workers' actions in the Swartwood matter and the sufficiency of the Agency's policies and procedures—issues at the heart of this litigation. Defendants concede the information sought is relevant to Plaintiffs' *Monell* claim.

Accordingly, the Court concludes the redacted text is relevant to the case.

### ii. Availability of Comparable Evidence From Other Sources.

The lines of text in question are the findings and recommendations of an internal independent investigation by the Office of Ombudsman. One of Ombuds' significant roles is to investigate complaints made against social workers and make findings and recommendations stemming from the investigation. (Zanders Decl. ¶¶ 3-5.) Defendants concede this information is not available from other sources. (Defs.' Mem. of P. & A. ISO Opp'n at 7.)  This factor weighs heavily in favor of disclosure. *See North Pacifica*, 274 F. Supp. 2d at 1124 (noting that this factor is "perhaps the

most important factor in determining whether the deliberative-process privilege should be overcome").

### iii. Government's Role in the Litigation.

Obviously, as a defendant, the government plays a prominent role in this litigation. In *Newport Pacific, Inc. v. County of San Diego*, 200 F.R.D. 628, 640 (S.D. Cal. 2001), the court held the "nature of the allegations and the role of the government in the litigation itself . . . tip [ped] the scales in favor of disclosure." Thus, the government's role in this litigation similarly militates toward disclosure.

### iv. Chilling of Agency Discussion.

Defendants rely on a declaration by Debra Zanders-Willis, Deputy Director of Child Welfare Services, for the proposition that the entire process of Ombuds investigations "would be tainted because the investigator, instead of being independent and simply following the evidence wherever it leads, would likely be affected by knowing that the person complaining about the social worker will likely be informed of the results of the investigation . . . ." (Zanders-Willis Decl. ¶ 9.) Zanders-Willis contends independent investigations may cease completely if the results of investigations could be provided to plaintiffs in subsequent civil lawsuits. (*Id*.) Despite the entrance of a protective order in this matter, Zanders-Willis argues the protection of the order does not alleviate the concerns of disclosure because Defendants are more concerned with the detriment of disclosing the results to plaintiffs as opposed to outside parties. (*Id*.)

In *Sanchez v. Johnson*, 2001 WL 1870308 *1 (N.D. Cal. 2001), the court faced similar contentions regarding the chilling effect disclosure of documents would have on behind-the-scenes discussions. There the court held disclosure of the documents "intrude[d] minimally, and without prejudice, into agency deliberations." *Sanchez*, 2001 WL 1870308 at *4 n. 7. And in *Price v. County of San Diego*, 165 F.R.D. 614, 620 (S.D. Cal. 1996), the court similarly found the documents at issue should be produced and noted "the infringement upon the frank and independent

discussions regarding contemplated policies and decisions by the County . . . can be alleviated through the use of a strict protective order."

This Court finds both decisions persuasive. In short, Defendants' concerns regarding the frankness of Agency discussion does not weigh strongly against disclosure and can be mitigated through the use of the protective order.

### v. Interest in Judicial Fact-finding and Seriousness of Litigation Issues.

The desirability of accurate fact-finding weighs in favor of disclosure. Moreover, the issue in this litigation is whether the County and its agencies complied with federal law when removing and detaining the minor children. In addition, Plaintiffs assert *Monell* claims geared toward determining whether Defendants failed to change policies, advise, or discipline social workers following formal complaints and investigations into social workers' decisions to remove and detain children. (Pls.' Mem. of P. &A. at 7.) Defendants would be hard-pressed to argue a serious issue is not at stake in this litigation. The seriousness of the issue involved magnifies the interest of the court and society in accurate fact-finding. *See L.H. v. Schwarzenegger*, 2007 WL 2009807 *1, 8 (E.D. Cal July 6, 2007) (finding when issues involved are alleged violations of federally-protected civil rights, disclosure is favored). These factors support disclosure of the redacted text.

### vi. Issues of Alleged Government Misconduct And Federal Interest In Enforcement of Federal Law.

The misconduct alleged include Defendants' failure to change Agency policies and counsel or discipline social workers when complaints are made, as well as failure to properly investigate before removing minors from the home—a matter of constitutional significance. (Pls.' Mem. of P. & A. at 7-8.) As such, federal interest in the enforcement of constitutional law is clearly at play here. These factors also support disclosure.

### vii. Conclusion of Factor Analysis

Applying the multi-factor balancing test, the Court finds Plaintiffs' need for disclosure overrides Defendants' interest in confidentiality. In sum, the Ombuds investigation of the Swartwood matter is clearly relevant because it concerns the

specific incident listed in Plaintiffs' complaint; the information was generated by the Ombuds, a special unit of the Health and Human Services Agency; the information is not otherwise available to Plaintiffs; this type of investigative document is routinely generated by Defendant San Diego Health and Human Services Agency; and the claims concern federal civil rights law. Thus, the Court overrules Defendants' use of the deliberative process privilege as a basis to refuse to produce the redacted lines of text.

### 2. Official Information Privilege

Defendants also asserted the Official Information Privilege as a basis to withhold the 11 tines of text reflecting the conclusions and recommendations of the Ombuds investigation into the social worker's actions in the Swartwood matter.

The official information privilege is also a "qualified privilege" under federal common law that "must be formally asserted and delineated in order to be raised properly." *Kerr v. U.S. District Court for the Northern District of California,* 511 F.2d 192, 198 (9th Cir. 1975). In determining what level of protection should be afforded by this privilege, courts conduct a case by case balancing analysis, in which the interests of the party seeking discovery are weighed against the interests of the governmental entity asserting the privilege. *Kelly v. City of San Jose*, 114 F.R.D. at 660; *Miller v. Pancucci*, 141 F.R.D. at 300; *Hampton v. City of San Diego*, 147 F.R.D. at 230–31.

Before the Court, however, engages in the balancing of interests, the party asserting the privilege (Defendant San Diego Health and Human Services Agency) must properly invoke the privilege by making a "substantial threshold showing." *Kelly*, 114 F.R.D. at 669. In order to fulfill the threshold requirement, the party asserting the privilege must submit a declaration from a responsible official with personal knowledge of the matters to be attested to in the declaration. *Id.* The declaration must include: "(1) an affirmation that the agency generated or collected the material in issue and has maintained its confidentiality; (2) a statement that the official has personally reviewed the material in question; (3) a specific identification of the governmental or

1  privacy interests that would be threatened by disclosure of the material to plaintiff
2  and/or his lawyer; (4) a description of how disclosure subject to a carefully crafted
3  protective order would create a substantial risk of harm to significant governmental or
4  privacy interests, and (5) a projection of how much harm would be done to the
5  threatened interests if disclosure were made." *Id*. at 670.

6        Defendant submitted a declaration by Debra Zanders-Willis, Deputy Director
7  of Child Welfare Services. (Zanders-Willis Decl., Doc. No. 33-2.) The declaration
8  states the Agency and its Office of the Ombudsman generated the material at issue and
9  maintained its confidentiality insofar as it has not been disclosed to anyone other than
10 the Ombuds, Agency management and County Counsel. (Zanders-Willis Decl. at
11 ¶¶ 5, 7.) Zanders-Willis also personally reviewed the materials in question. (*Id*. at
12 ¶ 12.) (*Id*.) Her declaration states the interests of the Agency would be threatened by
13 disclosure of the material to Plaintiffs or their lawyer because it will likely taint future
14 investigators' willingness to independently follow evidence where it leads and the
15 Agency would no longer want to investigate complaints and make recommendations
16 for policy and procedure improvements if the information could be made available to
17 plaintiffs in subsequent civil suits. (*Id*. at ¶ 9.) According to Zanders-Willis, the
18 protective order would not alleviate the risk of harm to the Agency because the
19 "substantial detriment to the Agency would result from disclosing the investigation
20 results to the parties in this lawsuit, not outside parties." (*Id.* at ¶ 10.) Zanders-Willis,
21 however, was not able to project the harms that would be suffered by disclosure of the
22 Ombuds investigation findings. (*Id.* at ¶ 11.) Rather, she mentioned that as a result of
23 past investigations, policies and procedures have improved over the years, and she
24 fears the Agency will cease to allow investigations in the future if the results and
25 recommendations are subject to disclosure. (*Id*.)

26       The purpose of the declaration in support of an assertion of the official
27 information privilege "is to provide the court with the information it needs to make a
28 reasoned assessment of the weight of the interests that line up, in the particular

situation before the court, against the requested disclosure." *Kelly*, 114 F.R.D. at 670. The general assertions of potential harm in Zanders-Willis's declaration fail to establish that the potential disadvantages of disclosure outweigh the potential benefits of disclosure. *Miller*, 141 F.R.D. at 299.

For example, in *Soto v. City of Concord*, 162 F.R.D. 603, 613 (N.D. Cal. 1995), the court found that, where the defendants asserted only "the general proposition that internal affairs investigatory documents and statements of police officers and/or witnesses should remain secret in order to encourage 'frank discussions,' " that assertion was "insufficient to meet the threshold test for invoking the official information privilege" 162 F.R.D. at 614. " '[A] general claim of harm to the "public interest" is insufficient to overcome the burden placed on the party seeking to shield material from disclosure.' [Citation omitted.]" *Id*. (quoting *Kelly*, 114 F.R.D. at 672).

Other courts have held a declaration in support of the official information privilege must "provide *specific* information about how disclosure of the *specific* documents requested . . . would threaten the *specific* governmental and privacy interests at stake." *Bernat v. City of California City*, 2010 WL 4008361, at *3 (E.D. Cal. 2010) (italics in original). Like in *Bernat*, the declaration submitted to assert the privilege in this matter fails to provide *specific* information about how disclosure of the *specific* lines of text requested would threaten a *specific* governmental interest at stake. (*See generally* Zanders-Willis Decl. at Doc. No. 33-2.) In fact, the only harm asserted in the declaration is harm that *may* result if the Agency *may* decide to no longer conduct Ombuds investigations out of fear disclosure *may* subject it to civil liability. (*Id*. at ¶ ¶ 9, 11.) The mere possibility that disclosure will "increase the likelihood of civil liability depending on the result of the investigation" is not the type of harm the privilege seeks to protect against. (*Id*. at ¶ 9.) This assertion is more akin to "[a] general claim of harm to the public interest [that] would not be sufficient to overcome the burden placed on the party seeking to shield material from disclosure."

*Kelly,* 511 F.2d at 672. Rather, when the results of an internal investigation reveal facts and findings that may increase the likelihood the Agency will be found liable for a civil rights violation, the information is exactly the important information necessary to assist plaintiffs in proving their cases.

Defendants' hypothetical situation conceivably *could* apply here if disclosure of the results of the investigation in this case *would* result in the Ombuds no longer conducting independent investigations into future complaints against social workers. This reasoning is flawed and at best is speculative. The declaration does not substantiate that independent investigations will in fact cease if disclosure is ordered in this matter. (Zanders-Willis Decl. at ¶ 9.) Further, the declaration's claim that future independent investigations will be tainted is based on unsound reasoning. (*Id.*) Zanders-Willis contends that if the *independent* investigators learn their investigations will have greater transparency and potentially be subject to public review, rather than conducting their investigations as they do now—by "simply following the evidence wherever it leads"—the investigators will become biased. (*Id.*) In addition to Zanders-Willis's failure to offer any facts to support such a fantastical theory, the idea that independent investigators will suddenly fail to see themselves as independent if the results of investigations are subject to disclosure defies logic. Essentially, the declaration states Ombuds independent investigators only remain unbiased because the results of their investigations remain confidential to people outside the Agency. Yet, the declaration offers no evidence to support the contention that independent investigators will become biased if the results of their investigations could be subject to disclosure.

Accordingly, Defendants fail to meet their threshold burden to invoke the privilege because the declaration only generally asserts Ombuds investigation results should be kept confidential based on the hypothetical proposition that disclosure could harm future investigations and "cripple the Agency's ability to self-evaluate and improve its policies." (Zanders-Willis Decl. at ¶ 9.) The Court finds the declaration

13

12cv1665-W

in this case lacks the requisite specificity and fails to allege any more than the general allegation of "harm to candid communications" that was found insufficient in *Soto* and *Miller*. Therefore, Defendants' assertion of the official information privilege is overruled and the lines of redacted text from the Office of Ombudsman, Brief Case Review: Swartwood Family must be produced.

### 3. Attorney-Client Privilege

Defendants asserted the attorney-client privilege with respect to one line of text contained in a email stream circulated among Agency employees. (Defs.' Mem. of P. & A. ISO Opp'n at 8.)

The attorney-client privilege protects "communications between client and attorney for the purpose of obtaining legal advice, provided such communications were intended to be confidential." *Gomez v. Vernon*, 255 F.3d 1118, 1131 (9th Cir. 2001). "Because the attorney-client privilege has the effect of withholding relevant information from the fact-finder, it is applied only when necessary to achieve its limited purpose of encouraging full and frank disclosure by the client to his or her attorney." *Clarke v. American Commerce Nat'l Bank*, 974 F.2d 127, 129 (9th Cir.1992) (citing *Fisher v. United States*, 425 U.S. 391, 403 (1976)). As the party asserting the privilege, Defendants bear the burden of establishing that the attorney-client privilege applies. *Clarke*, 974 F.2d at 129.

Defendants have successfully established that the lines of text redacted from the email stream on page 33 of the document production fall within the attorney-client privilege. The text mentions Lisa Macchione, Senior Deputy County Counsel responsible for advising the Health and Human Services Agency and specifically the Child Welfare Services Department. According to Defendants, the redacted text repeats legal advice given by Lisa Macchione to Defendants. The email is written by Theresa Pelenska, Child Welfare Services Manager, and sent to Ann Fox, a manager at Child Welfare Services, as well as to Elyce Hoene, Protective Services Supervisor in the Health and Human Services Agency and Ed Cadena, Assistant Deputy Direct.

All recipients work for Defendants, thus are covered as clients by the attorney-client privilege.

Plaintiffs fail to provide any evidence or argument to refute the claim of attorney-client privilege with respect to this text. Accordingly, Plaintiffs' motion to compel the redacted text from this email stream is DENIED.

### III. Conclusion

For all of the above reasons, Plaintiffs' Motion to Compel disclosure is GRANTED in part and DENIED in part. Defendants must disclose the redacted text related to the investigation into the Swartwood's complaints against the social worker, lodged as Exhibit D to Defendants' Opposition. Defendant must produce the documents without redaction no later than **December 23, 2013**. The Court, however, denies Plaintiffs' request for disclosure of the redacted email stream because the text falls under the protection of the attorney-client privilege.

IT IS SO ORDERED.

DATED: December 18, 2013

Hon. Bernard G. Skomal
U.S. Magistrate Judge
United States District Court